No. 22-55982

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

CHARISSA KEEBAUGH, et al.,

*Plaintiffs-Appellees,*

v.

WARNER BROS. ENTERTAINMENT INC.,

*Defendant-Appellant.*

———————————

On Appeal from the United States District Court
for the Central District of California
Case No. 2:22-CV-01272 | Honorable Maame Ewusi-Mensah Frimpong

———————————

## APPELLANT'S EXCERPTS OF RECORD: VOLUME 3 OF 3

———————————

Christopher Chorba
Jeremy S. Smith
Patrick J. Fuster
Adrienne M. Liu
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

———————————

*Attorneys for Defendant-Appellant Warner Bros. Entertainment Inc.*

**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
karl@KRInternetLaw.com
Katherine E. Hollist (*pro hac vice* to come)
kate@KRInternetLaw.com
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158

**POLLOCK COHEN LLP**
Raphael Janove (*pro hac vice* to come)
rafi@pollockcohen.com
Adam Pollock (*pro hac vice* to come)
adam@pollockcohen.com
60 Broad St., 24th Fl.
New York, NY 10004
Telephone: (212) 337-5361

**JAY KUMAR LAW**
Jay Kumar (*pro hac vice* to come)
jay@jaykumarlaw.com
73 W. Monroe Street, Suite 100
Chicago, IL 60603
Telephone: (312) 767-7903

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| **CHARISSA KEEBAUGH, STEPHANIE NEVEU,** and **HEATHER MERCIERI,** on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>     v.<br><br>**WARNER BROS. ENTERTAINMENT INC.,** a Delaware corporation,<br><br>        Defendant. | Case No. 2:22-cv-01272<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Kronenberger Rosenfeld
150 Post Street, Suite 520 San Francisco, CA 94108

This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant. This Court has personal jurisdiction over Warner Bros. Entertainment Inc., because its principal place of business is in Burbank, California, it conducts substantial business in this District, and a substantial part of the acts and omissions complained of occurred in this District.

Plaintiffs Charissa Keebaugh ("Keebaugh"), Stephanie Neveu ("Neveu"), and Heather Mercieri ("Mercieri") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, for their Complaint against Warner Bros. Entertainment Inc., ("Defendant" or "Warner Bros.") allege, on knowledge as to their own actions, the investigation of Plaintiffs' counsel, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is a class action lawsuit against Warner Bros. for falsely advertising price discounts for in-game purchases in its mobile application game (or "app"), Game of Thrones Conquest ("GOTC"). GOTC has spent 105 weeks as one of the top 25 highest grossing applications on Apple's App Store, and is the number three highest grossing strategy game across both Apple and Android devices, with over 20 million downloads and approximately 300,000 active users as of December 2020.

2. GOTC has generated over $750 million in revenue since its 2017 inception by offering players "microtransactions" - the ability, while in the game, to make discrete in-app purchases of gold, building material, crafting material, armor, and other valuables necessary to level up one's account.

1    These in-app purchases, or "packs," range in price from $0.99 to $99.00 each.

2        3.    However, in its direct marketing to consumers (including

3    representations made at the time of purchase), Warner Bros. advertised false

4    former prices to induce players into believing they must act quickly to take

5    advantage of a limited-time sale price.

6        4.    For several years, Warner Bros. deceived consumers by offering

7    specific limited-time "bonuses" that purported to massively discount the price

8    of its in-game goods. It used strikethrough pricing and statements like "Limited

9    Time! 2000% Bonus Gold!" or "Black Friday Sale" to trick consumers into

10   believing they were benefitting from limited-time promotions that substantially

11   increased the value of their in-game purchases, especially in relation to

12   purchases made by competing players. These purported savings were false,

13   however, because the original pricing that these ads referenced were

14   fabricated.

15       5.    These advertisements ran for years. But at no point, let alone

16   within three months of the advertised discounts, were these in-game items

17   ever actually offered at a non-discounted price—*i.e.*, **without** their "limited

18   time" bonuses. In other words, Warner Bros. never sold these items at their

19   "original" price. It just offered false discounts from an original price that did not

20   exist, and its players bought packs on "sale" that were the same prices they

21   would ordinarily pay.

22       6.    Furthermore, the advertised "original" pricing does not reflect the

23   prevailing market retail pricing for these virtual in-game items, which have no

24   real-world value and whose pricing is entirely determined by Warner Bros.

25       7.    The Federal Trade Commission ("FTC") describes false former

26   pricing schemes as deceptive:

27           One of the most commonly used forms of bargain
             advertising is to offer a reduction from the advertiser's
28           own former price for an article. If the former price is

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

16 C.F.R. §233.1(a).

8.  California statutory and regulatory law also expressly forbid such pricing schemes. Specifically, Cal. Bus. & Prof. Code §17501 states:

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

9.  Defendant knew, or should reasonably have known, that its comparative price advertising was false, deceptive, misleading, and unlawful.

10.  Defendant has fraudulently concealed from and intentionally failed to disclose to Plaintiffs and the putative class members the truth about its advertised price discounts and former prices.

11.  Through this false and deceptive marketing, advertising, and pricing scheme, Warner Bros. has violated California law prohibiting the advertisement of goods for sale as discounted from false former prices, and prohibiting misleading statements about the existence and amount of price reductions.

3-ER-289

12. The claims and issues asserted herein are governed by California state law. The State of California has the greatest interest in policing corporate conduct occurring within the State.

13. Upon information and belief, the false advertisements and misleading statements emanated from the State of California, where Warner Bros. is situated.

14. Plaintiffs, individually and on behalf of all others similarly situated, hereby seek restitution, injunctive relief, punitive damages, attorney's fees, and all other relief which the Court may deem appropriate.

## JURISDICTION

15. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

16. This Court has personal jurisdiction over Warner Bros. Entertainment Inc., because its principal place of business is in Burbank, California, it conducts substantial business in this District, and a substantial part of the acts and omissions complained of occurred in this District.

## VENUE

17. Venue is proper in this District under 28 U.S.C. §1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

18. In addition, venue is proper in this District under 28 U.S.C. §1391(b)(1) and §1391(b)(3), in that Defendant resides in this District and is subject to this Court's personal jurisdiction.

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

3-ER-290

**PARTIES**

19.     Plaintiff Charissa Keebaugh is an individual who resides in Vancouver, Washington. She began playing GOTC during May of 2020, having downloaded the game from the Apple App Store. She purchased several False Gold Strikethrough packs (defined below), which she otherwise would not have purchased had she known about the deceptive advertising which she reasonably relied upon in making those purchases.

20.     Plaintiff Stephanie Neveu is a resident of Waddell, Arizona. She began playing GOTC during June 2019. Ms. Neveu purchased numerous False Gold Strikethrough packs and False Sale Packs (defined below) from June or July 2019 until October 2021, which she otherwise would not have purchased had she known about the deceptive advertising which she reasonably relied upon in making those purchases.

21.     Plaintiff Heather Mercieri is a resident of Dover, New Hampshire. She began playing GOTC during July 2018. She purchased False Gold Strikethrough Packs and False Sale Packs, which she otherwise would not have purchased had she known about the deceptive advertising which she reasonably relied upon in making those purchases.

22.     Upon information and belief, Defendant Warner Bros. Entertainment Inc. is a corporation that is incorporated in Delaware and has its principal place of business in Burbank, California.

**FACTS**

23.     GOTC is a mobile application strategy game developed by Defendant Warner Brothers Entertainment, Inc., available on iPhone and Android devices through the Apple App Store and Google Play platforms, respectively. GOTC is based upon the HBO television series "Game of Thrones" and the "A Song of Ice and Fire" book series by George R.R. Martin.

24.     GOTC has spent 105 weeks as one of the top 25 highest grossing

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

applications on Apple's App Store, and is the number three highest grossing strategy game across both Apple and Android devices, with over 20 million downloads and approximately 300,000 active users as of December 2020.

25.  GOTC, while free to initially download, has generated over $750 million in revenue since its 2017 inception. It makes this revenue by offering players "microtransactions," or discrete in-app purchases to help players advance in the game. These purchases include gold, building material, crafting material, armor, and other valuables, and the add-ons are necessary to level up one's account. An "in-app purchase" refers to a financial transaction initiated from within the mobile application itself. These in-app purchases, or "packs," range in price from $0.99 to $99.99 each.

26.  Once a player creates an account and starts playing, she is able to begin upgrading the level of her "Keep," or castle, and the buildings within it. She does this to strengthen her combat abilities and therefore maintain a competitive position in the coming battles for Seats of Power.

27.  In order to progress past a certain level in the game, it is necessary to purchase in-app "packs" that contain gold, building materials, crafting materials, research materials, dragon food, upgrade speed-ups, bubble shields, teleports, and other items that are essential to progress in the game. These essential items require spending real money, as they are otherwise only available in insufficient amounts through in-game labor alone.

28.  After a few days of playing and regularly making upgrades, the costs to purchase materials to make subsequent upgrades suddenly increase exponentially. For example, the cost of upgrading one's Keep to level 8 is only approximately 5,000 wood and 5,000 food. But shortly after, the cost of upgrading a Keep from level 29 to level 30 is astronomical in comparison, requiring nearly 900 million wood, 900 million food, 75 million stone, 23 million iron, 90,000 brick, 24,000 soldier pine, and 11,000 keystones. Acquiring the

1 rare resources necessary to make this upgrade alone would cost
2 approximately $600 in Advanced Building Packs, and a player must upgrade
3 several other buildings in their Keep at a similar cost in order to grow this
4 Keep level.

5     29.     These upgrades all costs gameplayers significant, real currency.
6 The packs necessary for these upgrades each have a version that is offered
7 at $99.99, $49.99, $19.99, $9.99, $4.99, and $0.99. The advertisements for a
8 particular pack at different pricing levels are identical in all respects except
9 cheaper levels display and contain less gold and resources. However,
10 progressing one's Keep to level 35, the maximum level, requires
11 approximately over $25,000 in pack purchases, assuming perfectly optimal
12 purchasing decisions and maximizing items obtained only through gameplay.

13     30.     Each and every time a player logs into the game, a pop-up
14 advertisement for a $99.99 pack fills the entire screen, prompting the player
15 to either accept the purchase or close the advertisement by clicking an "X" in
16 the corner to continue playing the game.

17     31.     Each and every displayed pack, whether located on the login pop-
18 up ad, or on the right corner, has an hourglass timer counting down the time
19 that the pack is still available, from the maximum of 59 minutes to a minimum
20 of one second.

21     32.     The hourglass timer creates a sense of urgency and scarcity to
22 induce a player to purchase a pack immediately.

23     33.     The pack advertisements consist of a graphical image which has,
24 in writing, a name of the pack. The graphical image also contains any relevant
25 descriptions of sales or special offers in which a higher quantity of items is
26 offered for the same price compared to normal versions of those packs.

27     34.     However, these advertisements are actually false, deceptive, and
28 intended to mislead players into making in-app purchases that they otherwise

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  would not have made. Defendant falsely promotes these packs as being on

2  sale or discounted by misrepresenting that such packs include limited-time

3  bonuses that purport to substantially increase the value of the packs. Since

4  the game pits players against each other, there is significant pressure on

5  players to take advantage of these limited-time offerings so that they can gain

6  a competitive edge against opponents who presumably are left to pay full

7  price.

8       35.    Additionally, the advertisements mislead players into believing

9  they will find themselves at a competitive *disadvantage* if they do not purchase

10  packs now, since they will be left paying full price for items their opponents

11  were able to purchase at a discount.

12       36.    There    are    two    primary    categories    of    deceptive    pack

13  advertisements: (a) packs that offer the illusion of gold discounts through the

14  strikethrough graphics, hereafter referred to as "False Gold Strikethrough

15  Packs," and (b) packs that falsely advertise that a pack contains extra value

16  by virtue of being on sale because of a holiday or as part of some other event,

17  hereafter referred to as "False Sale Packs." Any deceptively advertised pack

18  can belong to more than one of these categories simultaneously, or may be

19  deceptive for a separate reason outside of the ones belonging to the two main

20  categories.

21  **A.    False Gold Strikethrough Packs**

22       37.    The False Gold Strikethrough Packs display a small amount of

23  gold, with a strikethrough line, and then in bold typeface display a larger

24  amount of gold, implying that the pack once formerly contained the smaller

25  amount of gold. For example, a $99.99 pack may have "10,000" gold with a

26  strikethrough line over that number, and display in bigger, bolder letters

27  "120,000" gold. The intended message is that the pack formerly contained

28  10,000 gold but now is equipped with 120,000 gold, making it significantly

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  more valuable.

2  38.    However, these packs were in fact never offered for the smaller

3  amount of gold at all.



19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //



39.     There are dozens of False Gold Strikethrough Packs sold at the $99.99 price tier, including: Dragon Research Packs, Advanced Building Packs, Advanced Teleport Packs, Troop Training Boost Packs, Enhancement Packs, Crafting Materials Packs, and several more types of packs. None of these packs were ever offered with 10,000 gold at the $99.99 pricing tier despite having "10,000" struck through on the graphics of their respective ad copies.

40.     All of the above packs were offered at the $49.99 price tier as well. Among those packs, the struck through value was 5,000 gold next to a larger gold amount in bold. However, these packs were also never previously offered with 5,000 gold.

41.     Similarly, all of the above packs were also offered in the smaller

pricing tiers of $19.99, $9.99, $4.99, and $0.99—all with identical ad copies with the gold amounts correspondingly smaller in both the strikethrough portion and the bolder typeface. However, in all cases the smaller strikethrough price was never previously offered.

42. Defendant Warner Bros. had actual knowledge that the False Gold Strikethrough Packs contained false or misleading misrepresentations as to their prior gold values. Warner Bros. designed and promoted these advertisements from 2018 until present day, where the practice of offering these deceptive packs continues. Warner Bros. specifically represented in advertising the False Gold Strikethrough Packs that the packs contained "400%" or "2000%" bonus gold for a "Limited Time", while having actual knowledge that these quantitative representations were false.

43. For context, gold is the most valuable resource in the game. The average player can expect to earn approximately 1,000–3000 gold per day through in-game labor alone, such as participating in events. However, players usually do not net a surplus of gold per day because they must also spend it, either to progress in the game or to maintain their accounts. Players also require more gold as they level up, and a lack of gold stagnates growth and in fact precludes a player's ability to do almost any task in the game whatsoever.

44. Defendant Warner Bros. promoted these advertisements to induce players to purchase the packs all the while knowing that the packs contained quantitative misrepresentations with respect to the gold value displayed.

45. The amount of gold included in a pack, and whether a gold offer represents an increase in the amount of gold a player could purchase with the corresponding pack, is a material consideration when a player decides whether to purchase that pack.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

46.    Plaintiffs and the Classes reasonably relied on the "strikethrough" pricing when purchasing numerous False Gold Strikethrough Packs. Had Plaintiffs known the "strikethrough" pricing was false, Plaintiffs would not have purchased many of the False Gold Strikethrough Packs that they purchased.

**B.    False Sale Packs**

47.    The False Sale Packs misrepresent the existence of a sale whereby players can allegedly purchase more items and gold from a pack than they normally could for the same price. These are described as having a unique value relative to normal packs because of the words "Sale" or "Black Friday Special" or "Fathers' Day Special" prominently displayed. These False Sale Packs communicate to the reasonable GOTC player that the pack contains extra gold and items relative to the normally bi-weekly version of the packs.

48.    For example, the Black Friday Training Pack displays the words "Black Friday Sale." However, this pack is identical in the quantity of both gold and items as a Training Pack that was otherwise in circulation, across all pricing tiers that the two packs were offered in. Therefore, there was no difference whatsoever in the two pack offerings, and the players were not receiving the packs on "sale" in any capacity.

//

//

//

//

//

//

//

//

//

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19      49.     Other False Sale Packs include Father's Day Advanced Building

20   packs, Father's Day Building Enhancement packs, "Flash Sale" Advanced

21   Building packs, and dozens of other packs.

22      50.     Defendant Warner Bros. intentionally designed the packs to

23   mislead players into believing that the packs represented a sale value,

24   including an increase in items and gold, to induce those players to purchase

25   the packs. Defendant Warner Bros. knowingly took those ordinary item packs

26   and simply placed a "Sale" graphic on the ad copies without altering anything

27   else.

28      51.     Defendant Warner Bros. promoted these False Sale Packs from

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1  2018 until approximately April 2021. After approximately this period, "Sale"

2  packs generally include about 5,000–10,000 extra gold and a slight increase

3  in items over their normal non-sale counterparts, at the $99 tier.

4      52.    Plaintiffs all reasonably relied on the "Sale" graphics on the False

5  Sale Packs as a material consideration in purchasing those packs. Had the

6  Plaintiffs known the packs were not actually on sale in the manner

7  represented, they would not have purchased the False Sale Packs.

8                              **CLASS ALLEGATIONS**

9      53.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(2),

10  and (b)(3), on behalf of themselves and the following proposed "Nationwide

11  Class":

12          All persons in the United States, within the applicable
13          statute of limitations, who purchased False Gold
            Strikethrough Packs or False Sale Packs, and/or such
14          subclasses as the Court may deem appropriate.

15      54.    Plaintiff Charissa Keebaugh also brings this action on behalf of

16  herself and on behalf of the following class (the "Washington Class"):

17          All persons in Washington, within the applicable
18          statute of limitations, who purchased False Gold
            Strikethrough Packs or False Sale Packs, and/or such
19          subclasses as the Court may deem appropriate.

20      55.    Plaintiff Stephanie Neveu also brings this action on behalf of

21  herself and on behalf of the following class (the "Arizona Class"):

22          All persons in Arizona, within the applicable statute of
23          limitations, who purchased False Gold Strikethrough
            Packs or False Sale Packs, and/or such subclasses
24          as the Court may deem appropriate.

25      56.    Plaintiff Heather Mercieri also brings this action on behalf of

26  herself and on behalf of the following class (the "New Hampshire Class"):

27          All persons in New Hampshire, within the applicable
28          statute of limitations, who purchased False Gold

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Strikethrough Packs or False Sale Packs, and/or such subclasses as the Court may deem appropriate.

57.     Excluded from the proposed Classes are Defendant and its employees, officers, directors, legal representatives, heirs, successors, subsidiaries, and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed class.

58.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence they would use to prove those elements in individual actions alleging the same claims.

59.     This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification, in that Plaintiffs can demonstrate the elements delineated below.

60.     Numerosity. The members of the proposed Classes are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). While Plaintiffs believe that there are hundreds of thousands of members of the proposed Classes, the precise number of class members is unknown, but may be ascertained from Warner Bros.' books and records. On information and belief, Warner Bros. maintains a list of users that includes personal information for the user including their email addresses, whether they have made in-app purchases, and which in-app purchases they have made.

61.     Applying a reasonable and prudent person standard to the users of Game of Thrones Conquest under the same or similar circumstances, each user would qualify to be a class member requesting the right to cancel and get refunds on their in-app purchases. Any reasonable and prudent person under the same or similar circumstances wants to have the flexibility to

3-ER-301

disaffirm an in-app purchase that was made while believing that the packs they purchased were part of a sale or promotion but, in reality, were not.

62.   Ascertainability. The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control or Plaintiffs and the class members themselves. Plaintiffs anticipate providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

63.   Commonality and Predominance. This action involves common questions of law and fact, which predominate over any questions affecting individual class members. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3). These include, without limitation:

  a.   Whether Warner Bros. engaged in the conduct alleged in this Complaint;

  b.   Whether Warner Bros. violated the applicable statutes alleged herein;

  c.   Whether Warner Bros. designed, advertised, marketed, distributed, sold, or otherwise placed Game of Thrones Conquest into the stream of commerce in the United States;

  d.   Whether Warner Bros.' conduct emanated from the State of California;

  e.   Whether Plaintiffs and the class members are injured and harmed directly by Warner Bros.' false advertising designed to entice users into making in-app purchases they otherwise would not have made;

  f.   Whether Plaintiffs and the class members are entitled to damages due to Warner Bros.' conduct as alleged in this Complaint, and if so, in what amounts; and

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

g. Whether Plaintiffs and members of the Classes are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint.

64. <u>Typicality</u>. Plaintiffs' claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured through Warner Bros.' wrongful conduct as described above. *See* Fed. R. Civ. P. 23(a)(3). Warner Bros.' creation and display of its misleading advertisements is uniform for all Plaintiffs and class members.

65. <u>Adequacy</u>. Plaintiffs are adequate proposed class representatives because their interests do not conflict with the interests of the other members of the proposed Classes they seek to represent; because they have retained counsel competent and experienced in complex class action litigation; and because they intend to prosecute this action vigorously. The interests of the proposed Classes will be fairly and adequately protected by Plaintiffs and their counsel. *See* Fed. R. Civ. P. 23(a)(4).

66. <u>Declaratory and Injunctive Relief</u>. Warner Bros. has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the proposed Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed Classes as a whole. *See* Fed. R. Civ. P. 23(b)(2). Warner Bros.' wrongful conduct alleged herein is grounded in the creation and dissemination of Warner Bros.' pack offerings in-game, which are displayed uniformly. Plaintiffs' and the class members' injuries are real, immediate, and ongoing. Plaintiffs and class members seek injunctive and declaratory relief from Warner Bros.

67. <u>Superiority</u>. A class is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

**3-ER-303**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

The damages or other financial detriment suffered by Plaintiffs and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Warner Bros., so it would be impracticable for members of the proposed Classes to individually seek redress for Defendant's wrongful conduct.

68.     Applying the principles of equity or balance of equities, expecting an individual Plaintiff who is at a disadvantage with limited resources and spending capacity, and with minimal negotiating power, if any, to litigate claims against Warner Bros., a multibillion-dollar corporation that has immense resources and deep pockets, would be unfair. Class actions are a necessary and essential means to provide for public interest litigations with checks and balances to curtail deceptive practices by powerful private corporations, including Warner Bros.

69.     There is no special interest in class members individually controlling the prosecution of separate actions. And even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *See* Fed. R. Civ. P. 23(b)(3).

**CALIFORNIA LAW APPLIES TO THE ENTIRE NATIONWIDE CLASS**

70.     California's substantive laws apply to every class member, regardless of where in the United States the class member resides.

71.     Warner Bros. purports to bind GOTC's players to its Terms. While Plaintiffs contend these Terms fail to create a binding agreement with the players, the Terms require that any dispute be interpreted under California law. Thus, regardless of whether the Terms are binding, Warner Bros. has

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1 evidenced a clear intent to subject itself to California law.

2     72.   California's substantive laws may be constitutionally applied to the

3 claims of Plaintiffs and the Classes under the Due Process Clause, 14th

4 Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S.

5 Constitution. California has significant contacts, or significant aggregation of

6 contacts, to the claims asserted by Plaintiffs and all class members, thereby

7 creating state interests that ensure that the choice of California state law is

8 not arbitrary or unfair.

9     73.   Warner Bros.' United States headquarters and principal place of

10 business is located in California. Warner Bros. also owns property and

11 conducts substantial business in California. Therefore, California has an

12 interest in regulating Warner Bros.' conduct under its laws. Warner Bros.'

13 decision to reside in California and avail itself of California's laws, and to

14 engage in the challenged conduct from and emanating out of California,

15 renders the application of California law to the claims herein constitutionally

16 permissible.

17     74.   California is also the state from which Warner Bros.' alleged

18 misconduct and false statements emanated. This conduct similarly injured

19 and affected Plaintiffs and all other class members.

20     75.   The application of California laws to the Classes is also

21 appropriate under California's choice of law rules because California has

22 significant contacts to the claims of Plaintiffs and the proposed Classes, and

23 California has a greater interest in applying its laws here than any other

24 interested state.

25 //

26 //

27 //

28 //

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**FIRST CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law ("UCL")**

**Cal. Business & Professional Code §17200 *et seq.***

**(By Plaintiffs, individually and on behalf of the Nationwide Class)**

76.     Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

77.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

78.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

79.     A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

80.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

81.     Warner Bros. has violated the "unlawful" prong under the UCL and has engaged in "unfair, deceptive, untrue or misleading" advertising.

82.     The Federal Trade Commission Act prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. §52(a). FTC Regulations describe false former pricing schemes—similar to Warner Bros.' False Sale Packs and False Gold Strikethrough Packs in all material respects—as deceptive practices that would violate the FTC Act.

83.     16 C.F.R. §233.1 states:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $_____"), unless substantial sales at that price were actually made.

84. California law also prohibits false former pricing schemes. Cal. Bus. & Prof. Code §17501, entitled "Value determinations; Former price advertisements," states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was

21

the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

85.   As further detailed in the Second Claim for Relief below, California's False Advertising Law also prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code §1770(a)(9), and prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." *Id.* §(a)(13)

86.   The False Gold Strikethrough Packs violate the unlawful prongs of the UCL since they violate 16 C.F.R. §233.1, Cal. Bus. & Prof. Code §17501, Cal. Civ. Code §§1770(a)(9) and (a)(13).

87.   The False Sale Packs misrepresent the existence of a sale whereby players can allegedly purchase more items and gold from a pack than they normally could for the same price.

88.   Warner Bros.' use of the False Sale Packs violates 15 U.S.C. §45(a)(1), 15 U.S.C. §52(a), and the FTC Guidelines published in Title 16, Code of Federal Regulations, Section 233.

89.   It also violated and continues to violate Cal. Bus. & Prof. Code §17501, and Cal. Civ. Code §1770, sections (a)(9) and (a)(13), by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months preceding the publication and dissemination of advertisements containing the false former prices.

90.   Warner Bros. has also violated the "unfair" prong of the UCL by falsely representing that its consumers received a discount from a referenced "original" former price of its False Gold Strikethrough Packs where, in fact, Warner Bros. set an arbitrary price for the goods contained in these packs

and then falsely pretended the packs had ever been offered for sale without their "limited time bonus" contents.

91.   Additionally, Warner Bros. has violated the "unfair" prong of the UCL by falsely representing that its False Sale Packs contained unique, time-sensitive discounts when, in fact, they contained the same resources and in-game items as other packs not connected with specific sales events (*e.g.*, Black Friday).

92.   These acts and practices are unfair because they were likely to cause consumers to falsely believe that Warner Bros. was offering value, discounts, or bargains from the prevailing market value or worth of the products sold that do not, in fact, exist. As a result, purchasers (including Plaintiffs) reasonably understood that they were receiving valuable price reductions on purchases of in-game items. This, in turn, has induced reasonable purchasers to buy such products from Warner Bros. that they would not have otherwise purchased.

93.   The gravity of the harm to Plaintiffs and members of the Classes resulting from these unfair acts and practices outweighs any conceivable reasons, justifications, or motives that Warner Bros. may have had for engaging in such deceptive acts and practices.

94.   Additionally, Warner Bros. has violated the "fraudulent" prong of the UCL because its marketing and advertising materials included false "original" prices for its False Gold Strikethrough Packs, and because these same materials also suggested that the offers in the False Sale Packs were unique, limited, and would no longer be available at those price points following the conclusion of its sale events. In actuality, the packs never contained the "limited time" deals they purported to offer.

95.   Warner Bros.' acts and practices deceived Plaintiffs and the Classes at large. Specifically, Plaintiffs and the Classes relied on these

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

misleading and deceptive representations regarding the limited-time bonuses they could expect to receive in the packs. Each of these representations and deceptions played a substantial role in Plaintiffs' decisions to purchase the packs, and Plaintiffs would not have done so in the absence of such representations.

96. Plaintiffs and the Classes never received the benefit of their bargains with Warner Bros., in that the "discounted" resources offered for sale in the packs did not give them the anticipated competitive edge against their opponents. Competitors could simply purchase packs at the same false sale pricing after the alleged sales expired, notwithstanding the representation that these were limited-time offers.

97. Similarly, players who purchased the False Sale Packs and the False Gold Strikethrough Packs defensively (to protect against becoming overpowered by opponents who they believed had been able to take advantage of the purportedly limited-time bonuses) were deprived of the benefit of their bargains, because the threat itself was a fabrication. There was never a risk of falling behind due to a player's failure to purchase items at their discounted price, because the price was always discounted.

98. As a result of these violations under each of the fraudulent, unfair, and unlawful prongs of the UCL, Defendant has been unjustly enriched at the expense of Plaintiffs and members of the proposed Classes. Specifically, Warner Bros. has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive conduct

99. Through its unfair acts and practices, Warner Bros. has improperly obtained money from Plaintiffs and the class members. As such, Plaintiffs request that this Court cause Warner Bros. to restore this money to Plaintiffs and all class members, and to enjoin Warner Bros. from continuing

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

to violate the UCL, and/or from violating the UCL in the future. Otherwise, Plaintiffs, the class members, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## SECOND CLAIM FOR RELIEF

### Violation of California's False Advertising Law ("FAL")

### Cal. Business & Professional Code §17500 *et seq.*

### (By Plaintiffs, individually and on behalf of the Nationwide Class)

100. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

101. The FAL prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value, and former price.

102. Furthermore, the FAL provides that: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code §17501.

103. The False Gold Strikethrough Packs and the False Sale Packs misrepresent the existence of a sale whereby players can allegedly purchase more items and gold from a pack than they normally could for the same price.

104. Through its unfair acts and practices, Warner Bros. has improperly obtained money from Plaintiffs and the class members. As such, Plaintiffs request that this Court cause Warner Bros. to restore this money to Plaintiffs and all class members, and to enjoin Warner Bros. from continuing to violate the FAL, and/or from violating the FAL in the future. Otherwise, Plaintiffs, the class members, and members of the general public may be

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

3-ER-311

1  irreparably harmed and/or denied an effective and complete remedy if such
2  an order is not granted.

3  **THIRD CLAIM FOR RELIEF**

4  **Violation of the California Consumers Legal Remedies Act ("CLRA")**

5  **Cal. Civ. Code. §1750 *et seq.***

6  **(By Plaintiffs, individually and on behalf of All Classes)**

7  105.  Plaintiffs incorporate by reference all allegations in this Complaint
8  and restate them as if fully set forth herein.

9  106.  Plaintiffs and the other class members are consumers within the
10  meaning of Cal. Civ. Code §1761(d) and have engaged in a transaction within
11  the meaning of Cal. Civ. Code §§1761(e) and 1770.

12  107.  Defendant is a "person" within the meaning of Cal. Civ. Code
13  §§1761(c) and 1770 and sells "goods or services" within the meaning of Cal.
14  Civ. Code §§1761(b) and 1770.

15  108.  GOTC and the in-app purchases are a "good" or "service" within
16  the meaning of Cal. Civ. Code. §§1761(a) and (b).

17  109.  Warner Bros. has violated §1770(a)(13)'s proscription against
18  making false or misleading statements of fact concerning reasons for,
19  existence of, or amounts of, price reductions by misrepresenting the existence
20  of gold discounts via False Gold Strikethrough Packs and misrepresenting the
21  existence of holiday sales through its False Sale Packs.

22  110.  Plaintiffs and the other class members suffered actual damages
23  as a direct and proximate result of Warner Bros.' actions, concealment, and/or
24  omissions in the advertising, marketing, and promotion of its bait apps, in
25  violation of the CLRA, as evidenced by the substantial sums Warner Bros.
26  pocketed.

27  111.  Plaintiffs, on behalf of themselves and the class members,
28  demand judgment against Warner Bros. for injunctive relief and attorney's

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

fees.

## FOURTH CLAIM FOR RELIEF

### Fraud

### (By Plaintiffs, individually and on behalf of All Classes)

112. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

113. Defendant represented to all Plaintiffs that various purchased packs were on sale in that they gave a higher amount of gold than normal, that holiday or "sale" versions of the packs were not identical in item quantities to their normal counterparts, and that pack purchases bestowed a certain outcome upon purchase.

114. These representations were false because the packs were never offered with smaller amounts of gold; the "sale" versions of the packs were identical to their normal counterparts.

115. Defendant designed the graphical images on the advertisements in a way that intentionally attracted Plaintiffs to the enticing but false claims regarding gold amounts and the existence of sales

116. Plaintiffs reasonably relied upon the claims made in the advertisements in deciding to purchase the aforementioned packs.

117. Upon purchasing the packs, Plaintiffs were harmed because, had Plaintiffs known the claims were false, they would not have made those purchases.

118. Plaintiffs' reliance on Defendant's misrepresentations in its pack advertisements was a substantial factor in causing harm to Plaintiffs.

119. Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

3-ER-313

## FIFTH CLAIM FOR RELIEF

## Negligent Misrepresentation

## (By Plaintiffs, individually and on behalf of All Classes)

120. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

121. Defendant represented to all Plaintiffs that various purchased packs were on sale in that they gave a higher amount of gold than normal and that holiday or "sale" versions of the packs were not identical in item quantities to their normal counterparts.

122. These representations were false because the packs were never offered with smaller amounts of gold and the "sale" versions of the packs were identical to their normal counterparts.

123. Defendant designed the graphical images on the advertisements in a way that intentionally attracted Plaintiffs to the enticing but false claims regarding gold amounts and the existence of sales.

124. Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members, and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

## SIXTH CLAIM FOR RELIEF

## Violation of New Hampshire's Regulation of Business Practices for Consumer Protection Act

## (By Plaintiff Heather Mercieri, individually, and on behalf of the New Hampshire Class)

125. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

126. In the alternative, or to the extent California law does not apply, Plaintiff Heather Mercieri brings this Count on behalf of herself and the New

28

3-ER-314

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1     Hampshire Class.

2         127. New Hampshire's Regulation of Business Practices for Consumer

3     Protection, §358-A:1, is also known as the state's Consumer Protection Act.

4         128. Warner Bros. qualifies as a "Person" under §358-A:1 of the Act.

5         129. §358-A:2(VII) prohibits "Representing that goods or services are

6     of a particular standard, quality, or grade, or that goods are of a particular

7     style or model, if they are of another."

8         130. §358-A:2(IX) prohibits "Advertising goods or services with intent

9     not to sell them as advertised."

10        131. §358-A:2(XI) prohibits "Making false or misleading statements of

11     fact concerning the reasons for, existence of, or amounts of price reductions."

12        132. Warner Bros. violated (VII), (IX), and (XI) of §358-A:2 by

13     advertising False Gold Strikethrough Packs and False Sale Packs, which

14     Plaintiffs purchased.

15        133. Plaintiff Heather Mercieri and the New Hampshire Class were

16     injured by Warner Bros.' violations because, if not for Warner Bros.' deceptive

17     representations that the packs contained increased amounts of gold than

18     normally offered, and that the packs contained more items than usual

19     because of holiday sales, Plaintiffs would not have made the purchases.

20        134. Defendant's conduct has therefore caused and is causing

21     immediate and irreparable injury to Plaintiffs and the class members, and will

22     continue to both damage Plaintiffs and the class members and deceive the

23     public unless enjoined by this Court.

24        **SEVENTH CLAIM FOR RELIEF**

25     **Violation of Washington's Consumer Protection Act (RCW 19.86.020)**

26     **(By Plaintiff Charissa Keebaugh, individually, and on behalf of the**

27     **Washington Class)**

28        135. Plaintiffs incorporate by reference all allegations in this Complaint

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

and restate them as if fully set forth herein.

136. Plaintiff Charissa Keebaugh hereby brings this Claim, under Washington's Consumer Protection Act, Revised Code of Washington ("RCW") 19.86.020, against Warner Bros. on behalf of herself and the Washington Class.

137. Defendant Warner Bros. engages in acts and practices that had or have the capacity to deceive substantial portions of the public, during trade or commerce.

138. Warner Bros.' marketing of its False Gold Strikethrough Packs and False Sale Packs had the capacity to deceive substantial portions of the public because Warner Bros.' advertisements create the illusion of sales and/or discounts with respect to their False Gold Strikethrough Packs and False Sale Packs.

139. Defendant's deceptive advertising acts and practices significantly affected the public interest as thousands of consumers made purchases based on the representations in the advertisements.

140. Defendant's practices brought injury to Plaintiffs in that they made purchases they otherwise would not have made.

141. There is causation between the deceptive advertising and the injury suffered by Plaintiffs because, if not for Defendant's deceptive claims made in the advertisements of False Gold Strikethrough Packs and False Sale Packs, Plaintiffs would not have purchased those packs.

142. Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members, and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

//

//

3-ER-316

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

### III.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

A.    Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as class counsel;

B.    Awarding Plaintiffs and the class members compensatory damages and actual damages in an amount exceeding $5,000,000, to be determined by proof;

C.    Awarding Plaintiffs and the class members appropriate relief, including actual and statutory damages;

D.    For punitive damages;

E.    For civil penalties;

F.    For declaratory and equitable relief, including restitution and disgorgement;

G.    For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

H.    Awarding Plaintiffs and the class members the costs of prosecuting this action, including expert witness fees;

I.    Awarding Plaintiffs and the class members reasonable attorney's fees and costs as allowable by law;

J.    Specifically awarding Plaintiffs and the class members reasonable attorney's fees and costs, as well as injunctive relief, pursuant to the CLRA;

K.    Awarding pre-judgment and post-judgment interest; and

L.    Granting any other relief as this Court may deem just and proper.

//

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

# IV. JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

DATED: February 24, 2022          **KRONENBERGER ROSENFELD, LLP**


By: s/Karl S. Kronenberger
       Karl S. Kronenberger
       karl@KRInternetLaw.com
       Katherine E. Hollist *(Pro hac vice
       forthcoming)*
       kate@KRInternetLaw.com
       150 Post Street, Suite 520
       San Francisco, CA 94108
       Telephone: (415) 955-1155

**POLLOCK COHEN LLP**
Raphael Janove
rafi@pollockcohen.com
Adam Pollock
adam@pollockcohen.com
60 Broad St., 24th Fl.
New York, NY 10004
Telephone: (212) 337-5361
*Pro hac vice forthcoming*

**JAY KUMAR LAW**
Jay Kumar
jay@jaykumarlaw.com
73 W. Monroe Street, Suite 100
Chicago, IL 60603
Telephone: (312) 767-7903
*Pro hac vice forthcoming*

*Attorneys for Plaintiffs and the
Proposed Classes*

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  CHRISTOPHER CHORBA, SBN 216692
      cchorba@gibsondunn.com
2  JEREMY S. SMITH, SBN 283812
      jssmith@gibsondunn.com
3  PATRICK J. FUSTER, SBN 326789
      pfuster@gibsondunn.com
4  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
5  Los Angeles, CA  90071-3197
   Telephone: 213.229.7000
6  Facsimile:  213.229.7520

7  *Attorneys for Defendant*
   *Warner Bros. Entertainment Inc.*

8
                    UNITED STATES DISTRICT COURT
9
                  CENTRAL DISTRICT OF CALIFORNIA
10
                        WESTERN DIVISION
11

12  CHARISSA KEEBAUGH, STEPHANIE         CASE NO. 2:22-CV-01272-MEMF (AGRx)
    NEVEU, HEATHER MERCIERI, SOPHIA
13  NICHOLSON, and P.W., by and through JOIE   **DEFENDANT WARNER BROS.**
    WEIHER,                              **ENTERTAINMENT INC.'S NOTICE OF**
14                                       **APPEAL AND REPRESENTATION**
                   Plaintiffs,           **STATEMENT**
15
            v.
16                                       Case filed:  February 24, 2022
    WARNER BROS. ENTERTAINMENT INC.,     Judge:       Hon. Maame Ewusi-Mensah
17  a Delaware corporation,                           Frimpong

                   Defendant.
18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

        DEFENDANT WARNER BROS. ENTERTAINMENT INC.'S NOTICE OF APPEAL
                    AND REPRESENTATION STATEMENT
                  CASE NO. 2:22-CV-01272-MEMF (AGRx)                    3-ER-319

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that Defendant Warner Bros. Entertainment Inc. hereby appeals to the United States Court of Appeals for the Ninth Circuit from this Court's order denying Defendant's Motion to Compel Arbitration and Stay Proceedings (Dkt. 52), filed in this case on October 13, 2022.

Dated:   October 20, 2022          GIBSON, DUNN & CRUTCHER LLP

By:          */s/ Christopher Chorba*
                       Christopher Chorba

Christopher Chorba
Jeremy S. Smith
Patrick J. Fuster
*Attorneys for Defendant Warner Bros. Entertainment Inc.*

1

Gibson, Dunn &
Crutcher LLP

3-ER-320

**REPRESENTATION STATEMENT**
Ninth Circuit Rule 3-2(b)

**Counsel for Defendant-Appellant Warner Bros. Entertainment Inc.:**

    Christopher Chorba, SBN 216692
     cchorba@gibsondunn.com
    Jeremy S. Smith, SBN 283812
     jssmith@gibsondunn.com
    Patrick J. Fuster, SBN 326789
     pfuster@gibsondunn.com
    GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
    Los Angeles, CA 90071-3197
    Telephone: 213.229.7000
    Facsimile: 213.229.7520
    (all of Defendant-Appellant's counsel are registered for electronic filing in the Ninth Circuit)

**Counsel for Plaintiffs-Appellees Charissa Keebaugh, Stephanie Neveu, Heather Mercieri, Sophia Nicholson, and P.W., by and through Joie Weiher:**

    Karl S. Kronenberger (Bar No. 226112)
     karl@kr.law
    Katherine E. Hollist (admitted pro hac vice)
     kate@kr.law
    KRONENBERGER ROSENFELD, LLP
    150 Post Street, Suite 520
    San Francisco, CA 94108
    Telephone: (415) 955-1155
    Facsimile: (415) 955-1158

    Raphael Janove (admitted PHV)
     rafi@pollockcohen.com
    Adam Pollock (admitted PHV)
     adam@pollockcohen.com
    POLLOCK COHEN LLP
    111 Broadway, Suite 1804
    New York, NY 10006
    Telephone: (212) 337-5361

    Jay Kumar (admitted pro hac vice)
     jay@jaykumarlaw.com
    JAY KUMAR LAW
    73 W. Monroe Street, Suite 100
    Chicago, IL 60603
    Telephone: (312) 767-7903

Gibson, Dunn & Crutcher LLP

2

DEFENDANT WARNER BROS. ENTERTAINMENT INC.'S NOTICE OF APPEAL
AND REPRESENTATION STATEMENT
CASE NO. 2:22-CV-01272-MEMF (AGRx)

3-ER-321

**Query    Reports    Utilities    Help    Log Out**

ACCO,(AGRx),APPEAL,DISCOVERY,MANADR,STAYED

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
### CIVIL DOCKET FOR CASE #: 2:22-cv-01272-MEMF-AGR

| | |
|---|---|
| Charissa Keebaugh et al v. Warner Bros. Entertainment Inc., | Date Filed: 02/24/2022 |
| Assigned to: Judge Maame Ewusi-Mensah Frimpong | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Alicia G. Rosenberg | Nature of Suit: 370 Other Fraud |
| Demand: $5,000,000 | Jurisdiction: Diversity |
| Case in other court: USCA, 22-55982 | |
| Cause: 28:1332 Diversity-(Citizenship) | |

**Plaintiff**

**Charissa Keebaugh**
*on behalf of themselves and all others
similarly situated*

represented by **Adam Pollock**
Pollock Cohen LLP
111 Broadway, Suite 1804
New York, NY 10006
212-337-5361
Email: adam@pollockcohen.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jay Kumar**
Jay Kumar Law
73 West Monroe Street, Suite 100
Chicago, IL 60603
312-767-7903
Email: jay@jaykumarlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey M. Rosenfeld**
Kronenberger Rosenfeld LLP
300 Spectrum Center Drive, Suite 400
Irvine, CA 92618
949-374-5036
Fax: 949-374-5036
Email: jeff@kr.law
*ATTORNEY TO BE NOTICED*

**Katherine E. Hollist**
Kronenberger Rosenfeld, LLP
150 Post St.
Ste. 520
San Francisco, CA 94108
415-955-1155
Email: kate@kr.law
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Raphael Janove**
Pollock Cohen LLP
1617 John F. Kennedy Blvd., 20th Floor
Philadelphia, PA 19103
(215) 667-8607
Fax: (347) 696-1227
*ATTORNEY TO BE NOTICED*

**Karl S. Kronenberger**
Kronenberger Rosenfeld LLP
150 Post Street Suite 520
San Francisco, CA 94108
415-955-1155
Fax: 415-955-1158
Email: karl@KRInternetlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stephanie Neveu**
*on behalf of themselves and all others
similarly situated*

represented by **Adam Pollock**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jay Kumar**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey M. Rosenfeld**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine E. Hollist**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Raphael Janove**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karl S. Kronenberger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Heather Mercieri**
*on behalf of themselves and all others
similarly situated*

represented by **Adam Pollock**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jay Kumar**

3-ER-323

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey M. Rosenfeld**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine E. Hollist**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Raphael Janove**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karl S. Kronenberger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sophia Nicholson**                    represented by  **Karl S. Kronenberger**
Kronenberger Rosenfeld LLP
150 Post Street, Suite 520
San Francisco, CA 94108
415-955-1155
Fax: 415-955-1158
Email: karl@KRInternetlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**P.W.**                                 represented by  **Karl S. Kronenberger**
*by and through his Guardian JOIE*                       (See above for address)
*WEIHER; on behalf of themselves and all*                *ATTORNEY TO BE NOTICED*
*others similarly situated*

V.

**Defendant**

**Warner Bros. Entertainment Inc.**     represented by  **Jeremy Sokol Smith**
*a Delaware corporation*                                 Gibson Dunn and Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
213-229-7000
Fax: 213-229-7520
Email: jssmith@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Patrick James Fuster**
Gibson Dunn and Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071

213-229-7117
Fax: 213-229-6117
Email: PFuster@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Christopher Chorba**
Gibson Dunn and Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
213-229-7000
Fax: 213-229-7520
Email: cchorba@gibsondunn.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/24/2022 | 1 | COMPLAINT Receipt No: ACACDC-32843538 - Fee: $402, filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu. (Attorney Karl S Kronenberger added to party Charissa Keebaugh(pty:pla), Attorney Karl S Kronenberger added to party Heather Mercieri(pty:pla), Attorney Karl S Kronenberger added to party Stephanie Neveu(pty:pla)) (Kronenberger, Karl) (Entered: 02/24/2022) |
| 02/24/2022 | 2 | CIVIL COVER SHEET filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu. (Kronenberger, Karl) (Entered: 02/24/2022) |
| 02/24/2022 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu. (Kronenberger, Karl) (Entered: 02/24/2022) |
| 02/24/2022 | 4 | CERTIFICATE of Interested Parties filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu, (Kronenberger, Karl) (Entered: 02/24/2022) |
| 02/25/2022 | 5 | NOTICE OF ASSIGNMENT to District Judge Christina A. Snyder and Magistrate Judge Alexander F. MacKinnon. (jtil) (Entered: 02/25/2022) |
| 02/25/2022 | 6 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (jtil) (Entered: 02/25/2022) |
| 02/25/2022 | 7 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (jtil) (Entered: 02/25/2022) |
| 02/28/2022 | 8 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening), 1 as to Defendant Warner Bros. Entertainment Inc. (jtil) (Entered: 02/28/2022) |
| 02/28/2022 | 9 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Katherine E. Hollist. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (jtil) (Entered: 02/28/2022) |
| 02/28/2022 | 10 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Raphael Janove. A document recently filed in this case lists you as an out-of-state attorney of |

| | | |
|---|---|---|
| | | record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (jtil) (Entered: 02/28/2022) |
| 02/28/2022 | [11](#) | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Adam Pollock. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (jtil) (Entered: 02/28/2022) |
| 02/28/2022 | [12](#) | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Jay Kumar. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (jtil) (Entered: 02/28/2022) |
| 03/03/2022 | [13](#) | NOTICE of Appearance filed by attorney Jeffrey M Rosenfeld on behalf of Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu (Attorney Jeffrey M Rosenfeld added to party Charissa Keebaugh(pty:pla), Attorney Jeffrey M Rosenfeld added to party Heather Mercieri(pty:pla), Attorney Jeffrey M Rosenfeld added to party Stephanie Neveu(pty:pla))(Rosenfeld, Jeffrey) (Entered: 03/03/2022) |
| 03/03/2022 | [14](#) | APPLICATION of Non-Resident Attorney Katherine E. Hollist to Appear Pro Hac Vice on behalf of Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-32886662) filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu. (Attachments: # [1](#) Proposed Order) (Rosenfeld, Jeffrey) (Entered: 03/03/2022) |
| 03/03/2022 | [15](#) | APPLICATION of Non-Resident Attorney Jay Kumar to Appear Pro Hac Vice on behalf of Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-32886945) filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu. (Attachments: # [1](#) Proposed Order) (Rosenfeld, Jeffrey) (Entered: 03/03/2022) |
| 03/03/2022 | [16](#) | ORDER RETURNING CASE FOR REASSIGNMENT by Judge Christina A. Snyder. ORDER case returned to the Clerk for random reassignment pursuant to General Order 21-01. Case randomly reassigned from Judge Christina A. Snyder to Judge Maame Ewusi-Mensah Frimpong for all further proceedings. The case number will now reflect the initials of the transferee Judge 2:22-cv-01272 MEMF(AFMx). (rn) (Entered: 03/03/2022) |
| 03/04/2022 | [17](#) | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non-Resident Attorney Katherine E. Hollist to Appear Pro Hac Vice on |

| | | |
|---|---|---|
| | | behalf of Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-32886662) 14 . The following error(s) was/were found: Local Rule 83-2.1.3.2(a) Applicant resides in California. (lt) (Entered: 03/04/2022) |
| 03/04/2022 | 18 | PROOF OF SERVICE Executed by Plaintiff Charissa Keebaugh, Heather Mercieri, Stephanie Neveu, upon Defendant Warner Bros. Entertainment Inc. served on 3/3/2022, answer due 3/24/2022. Service of the Summons and Complaint were executed upon CT Corp - Diana Ruiz, Process Specialist - Person Authorized to Accept Service of Process in compliance with Federal Rules of Civil Procedure by method of service not specified.Original Summons NOT returned. (Kronenberger, Karl) (Entered: 03/04/2022) |
| 03/04/2022 | 19 | APPLICATION of Non-Resident Attorney Katherine E. Hollist to Appear Pro Hac Vice on behalf of Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu (Pro Hac Vice Fee - $500.00 Previously Paid on 3/3/2022, Receipt No. 32886662) filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu. (Attachments: # 1 Declaration of Katherine E. Hollist, # 2 Proposed Order) (Rosenfeld, Jeffrey) (Entered: 03/04/2022) |
| 03/07/2022 | 20 | APPLICATION of Non-Resident Attorney Raphael Janove to Appear Pro Hac Vice on behalf of Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-32906266) filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu. (Attachments: # 1 Proposed Order) (Rosenfeld, Jeffrey) (Entered: 03/07/2022) |
| 03/07/2022 | 21 | RESPONSE filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveuto Pro Hac Vice Application Due (G-109) - optional html form,,, 11 (Kronenberger, Karl) (Entered: 03/07/2022) |
| 03/07/2022 | 22 | ORDER by Judge Maame Ewusi-Mensah Frimpong: granting 15 Non-Resident Attorney Jay Kumar's application to Appear Pro Hac Vice on behalf of Plaintiffs Charissa Keebaugh, Stephanie Neven, and Heather Mercieri, designating Jeffrey M. Rosenfield as local counsel. (yl) (Entered: 03/08/2022) |
| 03/07/2022 | 23 | ORDER by Judge Maame Ewusi-Mensah Frimpong: granting 19 Non-Resident Attorney Katherine E. Hollist APPLICATION to Appear Pro Hac Vice on behalf of Plaintiffs Charissa Keebaugh, Stephanie Neven, and Heather Mercieri. Designating Jeffrey M. Rosenfield as local counsel. (yl) (Entered: 03/08/2022) |
| 03/08/2022 | 24 | ORDER by Judge Maame Ewusi-Mensah Frimpong: granting 14 Non-Resident Attorney Katherine E. Hollist APPLICATION to Appear Pro Hac Vice on behalf of Plaintiffs Charissa Keebaugh, Stephanie Neven, Heather Mercieri, designating Jeffrey M. Rosenfield as local counsel. (yl) (Entered: 03/09/2022) |
| 03/08/2022 | 25 | ORDER by Judge Maame Ewusi-Mensah Frimpong: granting 20 Non-Resident Attorney Janove, Raphael APPLICATION to Appear Pro Hac Vice on behalf of Plaintiffs Charissa Keebaugh, Stephanie Neveu, Heather Mercieri, on behalf of themselves and all others similarly situated, designating Rosenfeld, Jeffrey M as local counsel. (yl) (Entered: 03/09/2022) |
| 03/23/2022 | 26 | STIPULATION Extending Time to Answer the complaint as to Warner Bros. Entertainment Inc. answer now due 4/25/2022, re Complaint (Attorney Civil Case Opening), 1 filed by defendant Warner Bros. Entertainment Inc..(Attorney Christopher Chorba added to party Warner Bros. Entertainment Inc.(pty:dft))(Chorba, Christopher) (Entered: 03/23/2022) |
| 03/23/2022 | 27 | CORPORATE DISCLOSURE STATEMENT filed by Defendant Warner Bros. Entertainment Inc. identifying AT&T Inc. as Corporate Parent. (Chorba, Christopher) (Entered: 03/23/2022) |

| 03/23/2022 | 28 | Notice of Appearance or Withdrawal of Counsel: for attorney Patrick James Fuster counsel for Defendant Warner Bros. Entertainment Inc.. Filed by defendant Warner Bros. Entertainment Inc.. (Attorney Patrick James Fuster added to party Warner Bros. Entertainment Inc.(pty:dft))(Fuster, Patrick) (Entered: 03/23/2022) |
|---|---|---|
| 03/23/2022 | 29 | Notice of Appearance or Withdrawal of Counsel: for attorney Jeremy Sokol Smith counsel for Defendant Warner Bros. Entertainment Inc.. Filed by defendant Warner Bros. Entertainment Inc.. (Attorney Jeremy Sokol Smith added to party Warner Bros. Entertainment Inc.(pty:dft))(Smith, Jeremy) (Entered: 03/23/2022) |
| 03/24/2022 | 30 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Notice of Appearance or Withdrawal of Counsel (G-123), 28 . The following error(s) was/were found: Docket text and document conflict re: name of party. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (ak) (Entered: 03/24/2022) |
| 03/24/2022 | 31 | ORDER RETURNING CASE FOR REASSIGNMENT UPON RECUSAL by Magistrate Judge Alexander F. MacKinnon. ORDER case returned to the Clerk for random reassignment Discovery pursuant to General Order 05-07. Case randomly reassigned from Magistrate Judge Alexander F. MacKinnon to Magistrate Judge Alicia G. Rosenberg for all further proceedings. The case number will now reflect the initials of the transferee Judge 2:22-cv-01272 MEMF(AGRx). (rn) (Entered: 03/24/2022) |
| 03/28/2022 | 32 | APPLICATION of Non-Resident Attorney Adam Pollock to Appear Pro Hac Vice on behalf of Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-33018056) filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu. (Rosenfeld, Jeffrey) (Entered: 03/28/2022) |
| 03/29/2022 | 33 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non-Resident Attorney Adam Pollock to Appear Pro Hac Vice on behalf of Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-33018056) 32 . The following error(s) was/were found: Local Rule 83-2.1.3.3(b) Proposed order not attached. (lt) (Entered: 03/29/2022) |
| 03/29/2022 | 34 | APPLICATION of Non-Resident Attorney Adam Pollock to Appear Pro Hac Vice on behalf of Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu (Pro Hac Vice Fee - $500.00 Previously Paid on 3/28/2022, Receipt No. 33018056) filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu. (Attachments: # 1 Certificate of Good Standing for New Jersey, # 2 Certificate of Good Standing for New York, # 3 Proposed Order) (Rosenfeld, Jeffrey) (Entered: 03/29/2022) |
| 04/01/2022 | 35 | ORDER by Judge Maame Ewusi-Mensah Frimpong: granting 32 34 Non-Resident Attorney Adam Pollock APPLICATION to Appear Pro Hac Vice on behalf of Charissa Keebaugh, Heather Mercieri and Stephanie Neveu, designating Jeffrey M. Rosenfeld as local counsel. (lom) (Entered: 04/04/2022) |
| 04/19/2022 | 36 | STIPULATION for Extension of Time to File First Amended Complaint and for Defendant to Respond filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu. (Attachments: # 1 Proposed Order)(Kronenberg, Karl) (Entered: 04/19/2022) |
| 04/21/2022 | 37 | ORDER GRANTING STIPULATION TO EXTEND TIME FOR PLAINTIFFS TO FILE FIRST AMENDED COMPLAINT AND FOR DEFENDANT TO RESPOND TO FIRST AMENDED COMPLAINT [ECF NO. 36] by Judge Maame Ewusi-Mensah Frimpong. IT IS HEREBY ORDERED that Plaintiffs shall have until May 24, 2022, to file their |

| | | |
|---|---|---|
| | | proposed First Amended Complaint; IT IS HEREBY FURTHER ORDERED that Defendant shall have twenty-one (21) days to respond to Plaintiffs First Amended Complaint, or until June 14, 2022. (See document for further details) (yl) (Entered: 04/22/2022) |
| 04/28/2022 | 38 | CORPORATE DISCLOSURE STATEMENT filed by Defendant Warner Bros. Entertainment Inc. identifying Warner Bros. Discovery, Inc. as Corporate Parent. (Chorba, Christopher) (Entered: 04/28/2022) |
| 05/23/2022 | 39 | First AMENDED COMPLAINT against Defendant All Defendants amending Complaint (Attorney Civil Case Opening), 1 , filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu(Kronenberger, Karl) (Entered: 05/23/2022) |
| 06/13/2022 | 40 | Joint STIPULATION to Reschedule Briefing Schedule on Motion to Compel Arbitration and Further Responsive Pleading Deadline filed by defendant Warner Bros. Entertainment Inc.. (Attachments: # 1 Proposed Order)(Chorba, Christopher) (Entered: 06/13/2022) |
| 06/13/2022 | 41 | NOTICE OF MOTION AND MOTION to Compel Arbitration filed by defendant Warner Bros. Entertainment Inc.. Motion set for hearing on 8/25/2022 at 10:00 AM before Judge Maame Ewusi-Mensah Frimpong. (Attachments: # 1 Declaration of David Woldman with Exhibits, # 2 Proposed Order) (Chorba, Christopher) (Entered: 06/13/2022) |
| 07/12/2022 | 42 | ORDER GRANTING STIPULATION TO SET BRIEFING SCHEDULE ON MOTION TO COMPEL ARBITRATION AND FURTHER RESPONSIVE PLEADING 40 DEADLINE by Judge Maame Ewusi-Mensah Frimpong. The Court, having considered the parties Stipulation and finding good cause therefor, hereby GRANTS the Stipulation and ORDERS as follows: Opposition shall be filed by Thursday, July 21, 2022. The reply shall be filed by Thursday, August 11, 2022. The hearing on the motion to compel shall be set for Thursday, August 25, 2022, at 10:00 a.m.. A Rule 12(b) motion or further responsive pleading, if necessary, shall be filed 28 days after there is a final ruling on the motion to compel arbitration. IT IS SO ORDERED. (yl) (Entered: 07/13/2022) |
| 07/12/2022 | 43 | ORDER GRANTING STIPULATION TO SET BRIEFING SCHEDULE ON MOTION TO COMPEL ARBITRATION AND FURTHER RESPONSIVE PLEADING DEADLINE by Judge Maame Ewusi-Mensah Frimpong 40 . The Court, having considered the parties Stipulation and finding good cause therefor, hereby GRANTS the Stipulation and ORDERS as follows: Opposition shall be filed by Thursday, July 21, 2022. Reply shall be filed by Thursday, August 11, 2022. The hearing on the motion to compel shall be set for Thursday, August 25, 2022, at 10:00 a.m. A Rule 12(b) motion or further responsive pleading, if necessary, shall be filed 28 days after there is a final ruling on the motion to compel arbitration. IT IS SO ORDERED. (yl) (Entered: 07/13/2022) |
| 07/13/2022 | 44 | NOTICE OF CLERICAL ERROR: Due to clerical error, docket entry 43 was inadvertently docketed twice. (yl) (Entered: 07/13/2022) |
| 07/15/2022 | 45 | TEXT ONLY ENTRY by Judge Maame Ewusi-Mensah Frimpong. The Court continues the Motion to Compel Arbitration filed by defendant Warner Bros. Entertainment Inc. 41 to 10/06/2022 at 10:00 AM before Judge Maame Ewusi-Mensah Frimpong. Counsel shall take notice of this new date. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 07/15/2022) |
| 07/21/2022 | 46 | Opposition to Defendant's Motion to Compel Arbitration and Stay Proceedings Motion to Compel Arbitration and Say Proceedings re: NOTICE OF MOTION AND MOTION to Compel Arbitration 41 filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu, Sophia Nicholson, P.W.. (Attachments: # 1 Declaration Declaration of Raphael Janove, # 2 Declaration Declaration of, # 3 Proposed Order Proposed Order Denying Defendant's Motion to Compel Arbitration)(Attorney Karl S. Kronenberger added to party |

| | | Sophia Nicholson(pty:pla), Attorney Karl S. Kronenberger added to party P.W.(pty:pla)) (Kronenberger, Karl) (Entered: 07/21/2022) |
|---|---|---|
| 07/21/2022 | 47 | DECLARATION of Joie Weiher ISO Opposition to Defendant's Motion to Compel Arbitration NOTICE OF MOTION AND MOTION to Compel Arbitration 41 filed by Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu, Sophia Nicholson, P.W.. (Kronenberger, Karl) (Entered: 07/21/2022) |
| 08/11/2022 | 48 | REPLY in Support of NOTICE OF MOTION AND MOTION to Compel Arbitration 41 filed by Defendant Warner Bros. Entertainment Inc.. (Attachments: # 1 Declaration Responsive Declaration of Patrick J. Fuster)(Chorba, Christopher) (Entered: 08/11/2022) |
| 08/11/2022 | 49 | EXHIBIT 8 to NOTICE OF MOTION AND MOTION to Compel Arbitration 41 filed by Defendant Warner Bros. Entertainment Inc.. (Attachments: # 1 Proof of Service for Lodged Exhibit)(Fuster, Patrick) (Entered: 08/11/2022) |
| 09/29/2022 | 50 | TEXT ONLY ENTRY by Judge Maame Ewusi-Mensah Frimpong. The Court continues the time of the Motion to Compel Arbitration hearing 41 to 11:30 AM on 10/06/2022. Counsel shall take notice of this new time IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kd) TEXT ONLY ENTRY (Entered: 09/29/2022) |
| 10/06/2022 | 51 | DECLARATION of Patrick J. Fuster with respect to NOTICE OF MOTION AND MOTION to Compel Arbitration 41 *in response to Court's request at hearing* filed by Defendant Warner Bros. Entertainment Inc.. (Fuster, Patrick) (Entered: 10/06/2022) |
| 10/06/2022 | 53 | MINUTES OF Motion Hearing held before Judge Maame Ewusi-Mensah Frimpong: Case called. Court and counsel confer re: the Motion to Compel Arbitration filed by defendant Warner Bros. Entertainment Inc. 41 . The Court orders the parties to meet and confer regarding submission of the screenshots referenced during this hearing. Defendant shall submit said document no later than 5:00 pm today. If Plaintiff disagrees with Defendant's submission, they must submit their submission no later than today at 7:00 pm. The Court takes the matter under submission. A separate Court order shall issue. Court Reporter: Laura Elias. (lc) (Entered: 10/13/2022) |
| 10/13/2022 | 52 | ORDER DENYING DEFENDANT WARNER BROS. ENTERTAINMENT INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS WITHOUT PREJUDICE 41 by Judge Maame Ewusi-Mensah Frimpong. (lc) (Entered: 10/13/2022) |
| 10/20/2022 | 54 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Defendant Warner Bros. Entertainment Inc.. Appeal of Order on Motion to Compel Arbitration 52 . (Appeal Fee - $505 Fee Paid, Receipt No. ACACDC-34190140.) (Chorba, Christopher) (Entered: 10/20/2022) |
| 10/21/2022 | 55 | TRANSCRIPT ORDER re: Court of Appeals case number 22-55982, as to Defendant Warner Bros. Entertainment Inc. for Court Reporter. Court will contact Jeremy S. Smith at jssmith@gibsondunn.com with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the court reporter. (Smith, Jeremy) (Entered: 10/21/2022) |
| 10/21/2022 | 56 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 22-55982 assigned to Notice of Appeal to 9th Circuit Court of Appeals 54 as to Defendant Warner Bros. Entertainment Inc. (yl) (Entered: 10/24/2022) |
| 10/28/2022 | 57 | TRANSCRIPT for proceedings held on October 6, 2022. Court Reporter/Electronic Court Recorder: Laura M. Elias, phone number 213-894-0374. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Electronic Court Recorder |

| | | |
|---|---|---|
| | | before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 11/18/2022. Redacted Transcript Deadline set for 11/28/2022. Release of Transcript Restriction set for 1/26/2023. (Elias, Laura) (Entered: 10/28/2022) |
| 10/28/2022 | 58 | NOTICE OF FILING TRANSCRIPT filed for proceedings October 6, 2022 re Transcript 57 THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (Elias, Laura) TEXT ONLY ENTRY (Entered: 10/28/2022) |
| 10/31/2022 | 59 | TRANSCRIPT ORDER as to Plaintiffs Charissa Keebaugh, Heather Mercieri, Stephanie Neveu, Sophia Nicholson, P.W. for Court Reporter. Court will contact Jasper Eagleton at jasper@kr.law with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the court reporter. (Kronenberger, Karl) (Entered: 10/31/2022) |
| 11/09/2022 | 60 | STIPULATION for Extension of Time to File Answer to 11/28/2022 re Amended Complaint/Petition 39 filed by defendant Warner Bros. Entertainment Inc.. (Attachments: # 1 Proposed Order)(Chorba, Christopher) (Entered: 11/09/2022) |
| 11/10/2022 | 61 | NOTICE OF MOTION AND MOTION to Stay Case pending appeal *from order denying motion to compel arbitration* filed by defendant Warner Bros. Entertainment Inc.. Motion set for hearing on 1/19/2023 at 10:00 AM before Judge Maame Ewusi-Mensah Frimpong. (Attachments: # 1 Proposed Order) (Chorba, Christopher) (Entered: 11/10/2022) |
| 11/28/2022 | 62 | Joint STIPULATION to Stay Case pending appeal filed by defendant Warner Bros. Entertainment Inc.. (Attachments: # 1 Proposed Order)(Chorba, Christopher) (Entered: 11/28/2022) |
| 11/29/2022 | 63 | ORDER GRANTING STIPULATION TO ENTER STAY PENDING APPEAL [ECF NO. 62] by Judge Maame Ewusi-Mensah Frimpong. The current proceedings, including all motion practice, depositions, and/or discovery (with the limited exceptions described herein), is stayed until the Ninth Circuit issues its mandate in Defendants appeal, No. 22-55982; The parties shall exchange initial disclosures on December 26, 2022, which is 28 days after filing of the stipulation; Defendant will prepare a draft protective order and ESI protocol to govern the production of documents and information by December 26, 2022, which is 28 days after filing of the stipulation. (See document for further details) (yl) (Entered: 11/30/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/20/2023 08:26:45 | | |
| **PACER Login:** | gd0026LA | **Client Code:** | 95022-00053 |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-01272-MEMF-AGR End date: 1/20/2023 |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |